# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO. PJM-17-0376** |
| | * | |
| **KENNETH WAYNE HART,** | * | |
|   a/k/a "Redds," | * | |
|   a/k/a "Wayne Hawkins," | * | |
|   a/k/a "Hawk," | * | |
|   a/k/a "Big Daddy," | * | |
|   a/k/a "Billy Reds," | * | |
|   a/k/a "Billy Red Hart," | * | |
| | * | |
|   **Defendant** | * | |
| | * | |

******

## GOVERNMENT'S RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS

The United States of America, by and through the undersigned counsel, respectfully submits the following consolidated response to the Defendant's pretrial motions. The Government opposes the following motions:

- a motion to suppress evidence seized from various stops and searches of the Defendant (ECF No. 92); and
- a motion to suppress evidence seized pursuant to residential, cellphone, and email search warrants (ECF No. 93).

The Government respectfully requests that the Court deny as moot the Defendant's motion to suppress statements made to law enforcement (ECF No. 91). Moreover, the Government does not oppose the Defendant's motion for leave to amend, supplement, withdraw, or file additional motions (ECF No. 94). For the reasons set forth below, each motion opposed herein should be denied.

## I.     INTRODUCTION

Defendant Kenneth Wayne Hart is charged by a Second Superseding Indictment with one count of Conspiracy to Distribute and Possess with the Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846; one count of Conspiracy to Commit Sex Trafficking by Force, Fraud, or Coercion, in violation of 18 U.S.C. § 1594(c); two counts of Sex Trafficking by Force, Fraud, or Coercion, in violation of 18 U.S.C. § 1591(a); and one count of Witness Tampering, in violation of 18 U.S.C. §§ 1512(a)(2)(A) and (C). ECF No. 70.

## II.    RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS (ECF NO. 91)

The Defendant moves to suppress all statements made by the Defendant to law enforcement on April 21, 2017, April 25, 2017, May 11, 2017, and May 18, 2017. Def.'s Mot., ECF No. 91, at 2. He argues that the statements were obtained in violation of the Fifth Amendment to the U.S. Constitution and *Miranda v. Arizona*, 384 U.S. 436 (1966) on various grounds. As an initial matter, at trial, the Government does not intend to introduce statements made by the Defendant to law enforcement on the above dates. The Government may seek to admit portions of the Defendant's recorded jail calls while at Chesapeake Detention Facility, Central Detention Facility, and/or at Prince George's County Correctional Center. None of the grounds articulated by the Defense in its motion apply here because the statements were not made during or as a result of questioning by law enforcement. Instead, the Defendant initiated the jail-house calls—all of which were automatically recorded by the jail. For these reasons, the Defendant's motion to suppress statements should be denied as moot.

### III. OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS VARIOUS STOPS/ARRESTS AND SEARCHES OF THE DEFENDANT (ECF NO. 92)

The Defendant moves to suppress the evidence seized as a result of the Defendant's arrests on April 21, 2017 and April 25, 2017. The Defendant argues that such stops/arrests were in violation of the Fourth Amendment because law enforcement did not have reasonable suspicion or probable cause to effectuate the above-noted stops/arrests of the Defendant. As outlined below, the Defendant's arguments are meritless because law enforcement's actions did not violate the Fourth Amendment.

#### A. Standard of Review

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause ..." U.S. Const. amend IV. Ordinarily, a "search ... is 'unreasonable' unless it has been authorized by a valid search warrant, and in cases in which the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness." *United States v. DeQuassie*, 373 F.3d 509, 518 (4th Cir. 2004) (quoting *Camera v. Muni. Ct. of San Francisco*, 387 U.S. 523, 528-29 (1967)). Officers executing a search warrant for contraband have the authority "to detain the occupants of the premises while a proper searched is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981).

Warrantless arrests—and searches incident thereto—are permitted where there is probable cause to believe a felony is being or has been committed by the arrested individual, based upon the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). *Accord United States v. Watson*, 423 U.S. 411, 424 (1976) (warrantless arrest permitted if officer has probable

cause to believe felony has been committed, even if committed outside officer's presence); *United States v. Collins*, 412 F.3d 515, 518 (4th Cir. 2005); *United States v. Dickey-Bey*, 393 F.3d 449, 453-56 (4th Cir. 2004); *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004); *and United States v. McCraw*, 920 F.2d 224, 227 (4th Cir. 1990).

Searches incident to arrest—of the person and areas or containers within his or her immediate control—are a well-established exception to the warrant requirement of the Fourth Amendment. *See, e.g., Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979); *United States v. Robinson*, 414 U.S. 218 (1973); *Chimel v. California*, 395 U.S. 752, 762-63 (1969); *United States v. Currence*, 446 F.3d 554, 558-59 (4th Cir. 2006), *cert. denied*, 552 U.S. 1004 (2007); *United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir.), *cert. denied*, 537 U.S. 963 (2002); *and United States v. Nelson*, 102 F.3d 134, 1346 (4th Cir. 1996). Like other warrantless searches, a search incident to arrest "must be limited in scope to that which is justified by the particular purposes served by the exception." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Searches incident to arrest have both a geographic and temporal limitation. Geographically, such searches must be confined to the arrestee's person and the area within the arrestee's "immediate control," which is "the area into which an arrestee might reach in order to grab a weapon or evidentiary items." *Chimel*, 395 U.S. at 763. This can include both open and closed spaces, *see id.* ("A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested."), as well as locked items, *see United States v. Silva*, 745 F.2d 840, 847 (4th Cir. 1984) (upholding search incident to arrest where officer removed a key from the arrestee's pocket and unlocked a bag sitting next to the arrestee). Moreover, "officers may separate the suspect from the [item] to be searched, thereby alleviating their safety concerns, before they

4

conduct the search." *United States v. Han*, 74 F.3d 537, 542 (4th Cir.1996). Temporally, searches incident to arrest must be "substantially contemporaneous with the arrest," *Stoner v. California*, 376 U.S. 483, 486 (1964), and although a search can occur before an arrest is actually made, *see Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980), a search "may not precede an arrest and serve as part of its justification," *Sibron v. New York*, 392 U.S. 40, 63 (1968).

    **B.**    **April 21, 2017 Arrest and Search of the Defendant**

On April 21, 2017, law enforcement detained and later lawfully arrested the Defendant on felony and misdemeanor drug offenses, following the execution of a state search warrant at 11206 Cherry Hill Road, Apartment 202, Beltsville, Maryland. When law enforcement made entry into the apartment that morning, officers outside on the rear perimeter of the apartment building observed a digital scale and a plastic bag, which contained a quantity of cocaine, being thrown from Bedroom 2 of the apartment. As this occurred, law enforcement observed a male, later identified as the Defendant, running to the window of Bedroom 3 of the apartment and looking out. Upon seeing law enforcement, the Defendant moved quickly away from the window.

Once inside the apartment, law enforcement encountered a female inside of Bedroom 2, the Defendant in Bedroom 3, and other individuals in the common areas and other bedrooms of the apartment. Law enforcement lawfully detained all individuals in the living room area of the apartment to allow for the court-authorized search of the residence. During the search, law enforcement seized contraband, including quantities of drugs and drug paraphernalia, and electronic devices from within the apartment. From Bedroom 3, which law enforcement identified as the Defendant's bedroom, law enforcement seized, among other items, heroin, cocaine, and loose pills of Alprazolam and amphetamines from under the mattress; a metal sifter; additional

5

quantities of heroin and cocaine from the dresser and nightstand; a Maryland identification card in the name of Kenneth Wayne Hart; a bag of documents in the name of Kenneth Hart; and a white Samsung cellphone. Based on training and experience and knowledge of the case to date, law enforcement believed that the heroin, cocaine, and loose pills located in the Defendant's bedroom were not for personal use but for distribution/sale. Law enforcement also believed that the packaging of the recovered drugs was indicative of narcotics sales.

Based on these circumstances and the evidence recovered from the Defendant's bedroom, law enforcement lawfully arrested the Defendant on several state drug violations, including felony possession with the intent to distribute narcotics. Following the Defendant's arrest, law enforcement conducted a search of the Defendant's person, which was also lawful and valid. This search led to the discovery and recovery of approximately $1,100 in U.S. currency from the Defendant's clothes.

Therefore, based on the totality of the circumstances, law enforcement had probable cause to believe that the Defendant was or had been committing a felony from within the residence, and therefore, suppression of the arrest and search of the Defendant is not warranted.

### C. April 25, 2017 Stop, Arrest, and Search of the Defendant

Similarly, the facts of the April 25, 2017 stop, arrest, and search of the Defendant do not support suppression.

Following the Defendant's arrest on April 21, 2017, the Defendant was released from jail on the state drug offenses on or about April 23, 2017. On April 25, 2017, law enforcement conducted an undercover operation at the Red Roof Inn located at 9137 Baltimore Avenue, College Park, Maryland, against the Defendant's sex trafficking operation. An undercover officer

contacted one of the Defendant's victims in reference to a BackPage.com advertisement for commercial sex and conversed with the victim regarding prices for her to engage in sex with the undercover officer posing a potential date. After agreeing to an amount, the undercover officer told the victim that the undercover officer was on his way, and the victim told the undercover officer to meet her in a particular room number of the hotel. Once inside the hotel room, the undercover confirmed the price for sex, placed the money on the dresser, and detained the victim without incident. The victim then told law enforcement, among other things, that she was engaging in sexual acts against her will; that the Defendant beats her and takes all of her money; and that the Defendant forced her to use heroin.

Almost simultaneously to the interaction within the hotel room, law enforcement observed codefendant Anna Shipley approach the hotel on foot, carrying a bag of clothes, and yell at the victim. Law enforcement approached codefendant Shipley and inquired if she had any weapons or drugs on her person, to which she responded, "No, me and Redds sold them all." Based on their knowledge of the investigation to date, law enforcement knew that "Redds" was one of the Defendant's nicknames. Law enforcement searched her person, which led to the recovery of packing materials that law enforcement believed to be consistent with a person involved in the distribution of drugs. Then, law enforcement arrested codefendant Shipley.

A short time later, law enforcement saw the Defendant arrived at the hotel, driving his known vehicle. The Defendant parked and got out of the car, leaving the passenger (later identified as another victim of the Defendant) in the car. Law enforcement approached and stopped the Defendant for officer safety reasons, based on information that the Defendant was known to carry a handgun. On his person, law enforcement located and recovered quantities of heroin, cocaine,

and prescription pills. Law enforcement then the arrested the Defendant based on the sex trafficking violations and felony and misdemeanor drug charges.

**IV. OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANTS (ECF NO. 93)**

The Defendant moves to suppress all evidence obtained from the execution of certain search warrants—(1) at his residence, located at 11206 Cherry Hill Road, Apartment 202, Beltsville, Maryland, pursuant to a state search warrant executed on April 21, 2017; (2) on cellphones seized on April 21, 2017, pursuant to a federal search warrant dated December 20, 2017; (3) on his email account, khart0910@gmail.com, pursuant to a federal search warrant dated May 2, 2018; and (4) on additional cellphones seized during this investigation, pursuant to a federal search warrant dated July 18, 2019. The Defendant also challenges two additional search warrants, but the Government does not intend to introduce evidence obtained from those warrants at trial.[1] In his motion, the Defendant argues—in a conclusory manner without specific examples—that "The search and seizures conducted pursuant to these warrants violated the Fourth Amendment to the United States Constitution." Def.'s Mot., ECF No. 93, at ¶ 3. The Defendant also argues, again without specific examples, that the good-faith exception as noted in *Leon v. United States*, 468 U.S. 897 (1984), should not apply in this case. *Id.* at ¶ 6. For the reasons set forth below, the Defendant's motion should be denied.

---

[1] The December 20, 2017 cellphone search warrant superseded the July 21, 2017 state search warrant for cellphones seized on April 21, 2017 and therefore the Government responds to the merits of the federal search warrant. Law enforcement attempted to execute the November 20, 2017 federal search warrant but was unsuccessful.

## A. Standard of Review

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. "A warrant is constitutionally sound when issued by a neutral magistrate and supported by probable cause." *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011). Probable cause "is a 'fluid concept' that turns on 'the assessment of probabilities,' not on any formula such as is applied to proof at trial." *United States v. Dickey-Bay*, 393 F.3d 449, 454 (4th Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. at 232); *see also Maryland v. Pringle,* 540 U.S. 366, 371 (2003) ("The probable cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances."). Probable cause exists when "there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of crime and will be present at the time and place of the search." *United States v. Ramos-Cruz*, 667 F.3d 487, 502 (4th Cir. 2012) (quoting United *States v. Suarez,* 906 F.2d 977, 986 (4th Cir. 1990)). An affidavit submitted in support of probable cause permissibly relies on hearsay information so long as adequate corroboration of that hearsay exists. *See United States v. McKenzie-Gude*, 671 F.3d 452, 462 (4th Cir. 2011). When assessing a search warrant application, the magistrate judge is simply tasked with making a "practical, commonsense

decision" based on "all the circumstances set forth in the affidavit before him." *Gates,* 462 U.S. at 238.

The standard for reviewing the probable cause determination underlying a search warrant is well-established: The reviewing court "must accord 'great deference' to the magistrate's assessment of the facts presented to him. [The reviewing court] may ask only whether the magistrate had a 'substantial basis . . . for concluding' that probable cause existed." *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990) (internal citation omitted); *see Suarez,* 906 F.2d at 986 (a magistrate judge's "finding of probable cause is subject to great deference on review") (citing *Gates,* 462 U.S. at 238)). "[T]he task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant[s]." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

**B. The Judges' Determinations Were Supported by Substantial Evidence in the Record.**

*i. State Residential Search Warrant Executed on April 21, 2017*

On April 20, 2017, the Honorable Michael Pearson, Circuit Court Judge for Prince George's County, Maryland, issued a search warrant for 11206 Cherry Hill Road, Apartment 202, Beltsville, Maryland.[2] Circuit Court Judge Pearson had a substantial basis for concluding that probable cause existed to issue the warrant. As set forth in the search warrant affidavit, based on source reporting from April 2017, law enforcement surveillance, a traffic stop where suspected

---

[2] The search warrant affidavit is attached as Exhibit 1.

crack cocaine was recovered, and a K-9 scan, law enforcement knew that violations of the Controlled Dangerous Substances Act of Maryland were occurring within this residence.

Furthermore, here, the affiant's conclusions are further corroborated by law enforcement surveillance during the month of April 2017 where law enforcement observed a high amount of foot traffic to and from the apartment. In the search warrant affidavit, the affiant explained that this activity was indicative of narcotics violations. The affiant noted that he recognized some of the individuals engaged in this activity from previous arrests to be known users of crack cocaine and heroin. Moreover, the affiant included in the affidavit a traffic stop of an individual that was observed entering and leaving the apartment during one of the April 2017 surveillances, and the recovery of approximately 0.5 grams of crack cocaine from that individual during the stop. The Government respectfully submits that this Court, in its deferential review of the warrant, should find that Circuit Court Judge Pearson had a substantial basis for issuing the search warrant. The affiant asserted, based on his training and experience, among other things, that drug traffickers frequently possess and conceal evidence of their drug trafficking activities at their residence, and that evidence of the drug-trafficking activities would be found within the target residence. Ex. 1 at 4-5 ¶¶ 7, 8, 16. The affiant also provided additional knowledge about drug trafficking in the affidavit. Ex. 1 at 4-6. The Fourth Circuit has repeatedly held that the district court should credit an agent affiant's training and experience, including in drug cases. *See, e.g.*, *United States v. Williams*, 548 F.3d 311, 320 (4th Cir. 2008) (reversing the district court's suppression of a warrant and stating that "[i]n light of our precedent, the district court erroneously discounted [the agent affiant]'s assertion of training- and experience-based knowledge to tie [the defendants'] drug trafficking activities to their residences.").

Therefore, the affidavit articulated ample grounds to support the finding of probable cause made by Circuit Court Judge Pearson, and the Defendant's arguments should be rejected.

### ii. Federal Search Warrants

The Defense also challenges the federal search warrants[3] obtained in this case. Yet, the Defense has articulated no particular grounds in its challenge. Indeed, perhaps tellingly, the Defendant's argument challenging probable cause is conclusory and barebones: "The affidavits provided in support of the above-listed search and seizure warrants failed to establish probable cause to permit the search authorized." Def.'s Mot. at ¶ 5. This is not so.

The Government maintains that there was ample evidence in the affidavits to support the probable cause findings made by United States Magistrate Judges Sullivan and DiGirolamo and that Judge Sullivan and Judge DiGirolamo were in the best position to determine if probable cause had been established in light of the circumstances as they appeared at the time. *DePew*, 932 F.2d at 327. "Great deference is normally paid to such a determination by the issuing judge, and our role [on appeal before the Fourth Circuit] is to determine whether the issuing court had a substantial basis for concluding that electronic surveillance would uncover evidence of wrong doing." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)); *see also United States v. McKinney*, 785 F. Supp. 1214, 1220 (D. Md. Feb. 24, 1992). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. The probable cause determination is a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit

---

[3] The search warrant affidavits are attached as Exhibit 2 (December 20, 2017 federal cellphone search warrant); Exhibit 3 (May 2, 2018 federal email search warrant); and Exhibit 4 (July 18, 2019 federal cellphone search warrant).

before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238; *see also United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005).

Therefore, there is no merit to the Defendant's claim.

### C. Even if the Search Warrants Were Not Supported by Probable Cause, the Good-Faith Exception Applies.

Assuming *arguendo* that the Court were to conclude that one or more of the warrants were not supported by substantial evidence of probable cause, law enforcement agents' good-faith reliance in acting on the search warrant requires that any evidence resulting therefrom not be suppressed. *See United States v. Leon*, 468 U.S. 897, 913 (1984). So long as the evidence flowed from a properly issued warrant, the fruits should not be suppressed even if the affidavit underlying the warrant is found to lack probable cause.

Here, armed with search warrants issued by either a neutral and detached Prince George's County, Maryland Circuit Court Judge or a neutral and detached United States Magistrate Judge for the District of Maryland, law enforcement agents searched the residences, cellphones, and email account, as applicable in the warrants. They were permitted to rely on the warrant in good faith. The only circumstances in which the good-faith exception does not apply is when "(1) the issuing judge was misled by information that the affiant knew or should have known was false, (2) the judge 'wholly abandoned' her neutral role, (3) the affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' or (4) the warrant is so facially deficient that no reasonable officer could presume it to be valid." *United States v. Ventura*, 2013 WL 1455278, at *17 n.42 (D. Md. April 8, 2013); *see also United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996) (listing criteria in which good faith exception would not apply).

13

Here, there is no suggestion that any of these circumstances exist. The defense motion spends only half of one page arguing that the good faith exception does not apply. The motion fails to identify which of the four *Leon* circumstances exist such that reliance on the warrants should be vitiated. Rather, the Defense states in a sweeping, conclusory manner, again without examples from any of the affidavits, that the "*Leon* 'good-faith' exception is not applicable because 'this is not a case of 'objectively reasonable law enforcement activity.'" Def.'s Mot. at ¶ 6.

Accordingly, even if one or more of the search warrant affidavits lack probable cause—which they do not—the Defendant's motion to suppress should be denied.

## V.     CONCLUSION

For the foregoing reasons, the Defendant's motions opposed to herein should be denied.

          Respectfully submitted,

          Robert K. Hur
          United States Attorney

By:          /s/
          Jennifer R. Sykes
          Kristi N. O'Malley
          Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on October 8, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                                         /s/
                                              Jennifer R. Sykes
                                              Assistant United States Attorney