# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| v. | *    CRIMINAL NO. PJM-17-0376 |
| KENNETH WAYNE HART, | * |
| Defendant | * |

## UNITED STATES' MOTION FOR PRELIMINARY ORDER OF FORFEITURE

The United States of America, by its attorney, Robert K. Hur, United States Attorney for the District of Maryland, respectfully moves this Court for the issuance of a Preliminary Order of Forfeiture in the above-captioned case pursuant to 18 U.S.C. § 1594(d)(2), 21 U.S.C. § 853(a)(1), and Rule 32.2(b) of the Federal Rules of Criminal Procedure. A proposed Preliminary Order of Forfeiture is submitted herewith. In support thereof, the United States sets forth the following:

### Background

1. On June 24, 2019, a federal grand jury in the District of Maryland returned a Second Superseding Indictment, charging Kenneth Wayne Hart (the "Defendant") with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846 (Count One); Conspiracy to Commit Sex Trafficking by Force, Fraud, and Coercion, in violation of 18 U.S.C. § 1594(c) (Count Two); Sex Trafficking by Force, Fraud, and Coercion, in violation of 18 U.S.C. § 1591(a) and (b)(1) (Counts Three and Four); and Witness Tampering, in violation of 18 U.S.C. § 1512(a)(2)(A) and (C) (Count Five). ECF No. 70.

2. The Second Superseding Indictment also included a forfeiture allegation that provided notice to the Defendant that the United States would seek forfeiture as part of any

sentence in the event of the Defendant's conviction on Counts One through Four of the Second Superseding Indictment.

3. Following a seven-day jury trial, on March 12, 2020, the Defendant was convicted on Counts One through Five of the Second Superseding Indictment by a federal jury sitting in the District of Maryland. ECF No. 155.

4. By this Motion, the United States now requests that the Court enter a Preliminary Order of Forfeiture imposing a forfeiture money judgment in the amount of **$121,600 in U.S. currency** against the Defendant, pursuant to 18 U.S.C. § 1594(d)(2), 21 U.S.C. § 853(a)(1), and Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure.

## Applicable Law

### A. Directly Forfeitable Property

5. Section 1594(d)(2) of Title 18 of the United States Code, requires the Court to order forfeiture as part of the Defendant's sentence of "any property, real or personal, constituting or derived from, any proceeds that such person obtained, directly or indirectly, as a result of [a sex trafficking offense under chapter 77 of Title 18], or any property traceable to such property." 18 U.S.C. § 1594(d)(2) ("[t]he court, in imposing a sentence on any person convicted of a violation of this chapter, shall order. . . that such person shall forfeit to the United States . . ."); *see United States v. Lewis*, 791 F. Supp. 2d 81, 901 (D.D.C. 2011) (forfeiture of sex trafficking proceeds under 18 U.S.C. § 1594(d) is mandatory).

6. Section 853(a)(1) of Title 21 of the United States Code also requires the Court to order forfeiture as part of the Defendant's sentence of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of [a violation of Title 21]." 21 U.S.C. § 853(a) (directing that "[t]he court, in imposing a sentence on [any person convicted

2

for a violation of Title 21], shall order . . . that the person forfeit to the United States all property described in this subsection.")

### B. Forfeiture Money Judgments

7. A forfeiture order may take the form of a personal money judgment. *See* Fed. R. Crim. P. 32.2(b)(1)(A) ("If the Government seeks a money judgment, the court must determine the amount of the money that the Defendant will be ordered to pay"). A defendant is not entitled to a jury determination on the amount a forfeiture money judgment. *See United States v. Jameel*, 626 F. App'x 415, 419 (4th Cir. 2015) (holding that defendant was not entitled to a jury trial to determine the amount of the forfeiture money judgment) (citing Fed. R. Crim. P. 32.2(b)(1)(A) and *United States v. Curbelo*, 726 F.3d 1260, 1277 (11th Cir. 2013)).

8. The amount of the money judgment shall be equal to the proceeds the defendant obtained from the offense and is not limited by the defendant's ability to satisfy the judgment at the time of sentencing or whether the defendant remains in possession of the proceeds of the offense. *United States v. Brown*, 2013 U.S. Dist. LEXIS 83463, at *4-5 (D. Md. June 7, 2013) (Quarles, J.) (citing *United States v. Newman*, 659 F.3d 1235, 1242-43 (9th Cir. 2011); *United States v. Vampire Nation*, 451 F.3d 189, 202 (3d Cir. 2006); and *United States v. Bourne*, 2012 U.S. Dist. LEXIS 19910 (E.D.N.Y. Feb. 15, 2012)).

9. In determining the proceeds obtained by the Defendant as a result of the offense, the Fourth Circuit applies a "but for" test under which "funds are considered proceeds and therefore deemed forfeitable if a person would not have [the funds] <u>but for</u> the criminal offense." *United States v. Farkas*, 474 F. App'x 349, 359-360 (4th Cir. 2012) (internal quotations omitted) (emphasis in original). The calculation of the forfeiture money judgment need not be exact because forfeiture is punitive, not restitutive. *See United States v. Roberts*, 660 F.3d 149, 166 (2d Cir. 2011)

("The law does not demand mathematical exactitude in calculating the proceeds subject to forfeiture. . .rather. . .district courts may make reasonable extrapolations supported by a preponderance of the evidence.") (internal quotations omitted).

10. This Court has held that "[w]hen the Government is seeking a money judgment in a drug case, the court may rely on reasonable estimates of the amount of money realized by the defendant from the sale of drugs based on the quantities sold, the amounts obtained at each sale, and the frequency of such sales over the course of the conspiracy." *Brown*, 2013 U.S. Dist. LEXIS 83463, at *5-6; *United States v. Abrahams*, 2014 U.S. Dist. LEXIS 80120, at *3-5 (D. Md. June 4, 2014) (Motz, J.) ("in a drug case, the Government need not produce actual sales receipts but may rely on reasonable estimates of the quantity of drugs imported and their value") (citing *Roberts*, 550 F.3d at 166); *see also United States v. Miles*, 319 F. App'x 266, 271-72 (4th Cir. 2009) (finding no error in district court's calculation of a forfeiture money judgment based upon the jury's finding as to the number of marijuana plants manufactured by the Defendant, less an estimate for the defendant's personal use, multiplied by the value per pound of the marijuana based on testimony introduced by the Government).

11. Courts likewise have imposed money judgments for the proceeds of sex trafficking based on the Government's estimates of the "total amount [the defendant] gained from the victims' labors." *See United States v. Lewis*, 791 F. Supp. 2d at 94-95 (overruling defendant's objection to the proposed $949,355 forfeiture money judgment finding the government had met its burden to prove the amount of proceeds obtained by the defendant under section 1594(d)).

12. If additional property is identified to satisfy the forfeiture money judgment, the Court may order the forfeiture of such property. *See* Fed. R. Crim. P. 32.2(e)(1) ("[T]he court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property

that . . . is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered; or . . . is substitute property . . . ."); *see also* Fed. R. Crim. P. 32.2(b)(2)(C).

### C. The Preponderance Standard Applies to Forfeiture Determinations

13. Because criminal forfeiture is part of a defendant's sentence, the Government's burden to establish the forfeitability of property is governed by the preponderance of the evidence standard. *See United States v. Tanner*, 61 F.3d 231, 234 (4th Cir. 1995) (because "forfeitures are a penalty . . . the preponderance standard should govern forfeiture questions"); *United States v. Cherry*, 330 F.3d 658, 669 (4th Cir. 2003) (because "[a] judgment of forfeiture. . .is not a separate conviction . . . [and instead] constitutes a part of the sentence . . . the court properly instructed the jury that the preponderance standard governed its [forfeiture] findings.")

14. The Court determines the forfeitability of specific property and amount of any money judgment "based on evidence already in the record, including any written plea agreement, and any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B); *see also Brown*, 2013 U.S. Dist. LEXIS 83463, at *5. In making its determination, the Court may rely on hearsay. *See id.* at *5 (the court may extrapolate the amount of the money judgment from the available evidence, including hearsay); *United States v. Poulin*, 690 F. Supp. 2d 415, 421 (E.D. Va. 2010) ("because the traditional rules of evidence do not typically apply to sentencing proceedings, courts may consider hearsay when determining forfeiture so long as it is sufficiently reliable").

15. Upon finding that the property is subject to forfeiture by a preponderance of the evidence, the Court:

> . . . must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing

the forfeiture of any substitute property if the government has met the statutory criteria. The court must enter the order without regard to any third party's interest in the property. Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

Fed. R. Crim. P. 32.2(b)(2)(A). The forfeiture money judgment is final as to the defendant "[a]t sentencing—or at any time before sentencing if the defendant consents." Fed. R. Crim. P. 32.2(b)(4)(A). Where the preliminary order of forfeiture "directs the defendant to forfeit specific property, it remains preliminary as to third parties until the ancillary proceeding is concluded under Rule 32.2(c)." *Id.* However, to the extent the preliminary order of forfeiture includes only a forfeiture money judgment, no ancillary proceeding is required. Fed. R. Crim. P. (c)(1).

### D. Substitute Property

16. If directly forfeitable property is not available for one of the reasons set forth in 21 U.S.C. § 853(p), the Court may order the forfeiture of substitute assets to satisfy a money judgment. *See* 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c),[1] and Fed. R. Crim. P. 32.2(e); *see also United States v. McCrea*, 584 F. App'x 157, 158 (4th Cir. 2014) ("Forfeiture of substitute assets is appropriate where the defendant does not have the money to pay the forfeiture money judgment") (citing *United States v. Oregon*, 671 F.3d 484, 489 (4th Cir. 2012). Specifically, 21 U.S.C. § 853(p) directs that the Court shall order forfeiture of substitute assets upon a showing that, due to the defendant's act or omission, directly forfeitable property:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

---

[1] Section 2461(c) expressly incorporates the procedure governing forfeiture of property contained in 21 U.S.C. § 853 and the Rule 32.2 of the Federal Rules of Criminal Procedure.

e. has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p); *see United States v. Alamoudi*, 452 F.3d 310, 314 (4th Cir. 2006) (holding that the forfeiture of substitute assets under section 853(p) is "not only permitted but *mandated* . . . if the conditions of 21 U.S.C. § 853(p) [are] satisfied") (emphasis added).

## Discussion

### A. Drug Proceeds

17. At trial, the United States introduced testimony that the Defendant obtained at least $100,000 in drug proceeds as the result of the conspiracy to distribute controlled substances charged in Count One of the Second Superseding Indictment. Specifically, at trial the United States introduced testimony that the Defendant distributed at least 50 grams of heroin per week at $100 per gram over the 20-week period of the conspiracy (December 2016 through April 2017) resulting in total proceeds of at least $100,000.[2] *See* Testimony of Victim 1, Victim 2, Crystal Smith, Anna Shipley, and Phil Perantanokis. Trial testimony established that the Defendant obtained heroin and cocaine from his sources of supply whenever his customers ordered drugs, which was most often on a daily basis and often several times a day. Trial testimony and physical evidence obtained from the April 21, 2017 search warrant at Apartment 202 revealed that the Defendant used Apartment 202 as his primary location to prepare, cook, and package heroin and crack cocaine for distribution to his customers and his sex trafficking victims.

18. Trial testimony also established that the Defendant sold and cooked his cocaine into crack cocaine at several residences. Trial testimony from the five witnesses confirmed that the Defendant sold the drugs to his customers for cash, paid his rent to Crystal Smith and Wayne

---

[2] This is a conservative estimate of the drug proceeds obtained by the Defendant because it excludes the proceeds obtained by the defendant from his distribution of cocaine base as charged in Count One of the Second Superseding Indictment.

Ramsaran in cash and in drugs, "fronted" drugs to his customers for payment at a later time, and had his sex trafficking victims deliver drugs to his customers. Moreover, during the execution of the April 21, 2017 search warrant at Apartment 202, law enforcement recovered from the Defendant's bedroom, among other items, approximately six grams of heroin, four grams of crack, amphetamine and Alprazolam pills, and materials used to cook crack and cut heroin. *See* Government Exhibit (GE) SW14, SW24, SW25, SW27, and SW36. Furthermore, during the April 25, 2017 undercover operation, law enforcement recovered approximately seven grams of heroin, two grams of crack, and 29 Tramadol pills from the Defendant's pocket. *See* GE UC13, UC14, and UC15.

19. Cellphone evidence presented at trial, including text messages, photos, and video from the Defendant's cellular phone, corroborated the trial testimony of the government's witnesses. While the text message evidence was limited to a ten day period in April 2017, the text messages clearly show the Defendant negotiating the sale of heroin and crack with drug customers. *See* GE C1 and C2. The nature of the text messages strongly suggest that the Defendant had an ongoing business relationship with those drug customers and supports the testimony of the trial witnesses that the Defendant routinely sold drugs to an established customer base.

20. As in *Brown* and *Abrahams*, here the Court may rely on "reasonable estimates of the amount of money realized by the defendant from the sale of drugs based on the quantities sold, the amounts obtained at each sale, and the frequency of such sales over the course of the conspiracy" in determining the amount of the forfeiture money judgment in this case. *Brown*, 2013 U.S. Dist. LEXIS 83463, at *6; *see also Abrahams*, 2014 U.S. Dist. LEXIS 80120, at *4.

### B. Sex Trafficking Proceeds

21. The United States also introduced testimony at trial that the Defendant obtained at least $21,600 in sex trafficking proceeds as the result of the sex trafficking conspiracy charged in Count Two of the Second Superseding Indictment. Specifically, the United States introduced testimony at trial from Victims 1 and 2 indicating that Victims 1 and 2 saw approximately five to ten clients per day, ranging on average between $60 to $120 per client depending on the length of the date and the kind of sex act. Trial testimony from Victims 1 and 2 and the Defendant's co-conspirator established that the women engaged in commercial sex every day at the direction of the Defendant and that the Defendant controlled the actions and lives of his female victims based on the climate of fear he had created. For example, if the women did not post on Backpage.com and go on "dates," the Defendant retaliated with physical violence, threatened them with physical violence and locked them in rooms, withheld their narcotics causing them to go through withdrawal symptoms, and stopped providing them food, clothing, etc.

22. Trial testimony also established that the victims did not keep any of the proceeds obtained from the commercial sex and that all proceeds went to the Defendant. At the end of each "date" the Defendant or his co-conspirator (at the direction of the Defendant) coordinated with the victims to retrieve all of the sex trafficking proceeds. If the victims attempted to withhold any proceeds from the Defendant, the Defendant retaliated against them. The Defendant's co-conspirator as well as Victims 1 and 2 further testified that they worked at least six days a week during a 12 week period from February 2017 to the Defendant's arrest on April 25, 2017. *See* Testimony of Anna Shipley, Victim 1, and Victim 2. Trial testimony and evidence from the undercover prostitution operation revealed that the Defendant's sex trafficking operation occurred

at various locations, including Apartment 202 and hotels on Baltimore Avenue in College Park, Maryland.

23. As set forth above, in determining the amount of the money judgment, the Court may rely on the evidence already in the record (*see* Fed. R. Crim. P. 32.2(b)(1)(A)) and may make "reasonable extrapolations from the facts." *Prather*, 456 F. App'x at 626. At trial, the Government introduced evidence to establish the proposed $121,600 forfeiture money judgment by a preponderance of the evidence.

24. Counsel for the United States conferred with counsel for the Defendant by email on March 27, 2020 and April 23, 2020. By email on April 23, 2020, the Defendant's counsel indicated that the Defendant does not consent to the proposed forfeiture money judgment.

25. Should the Defendant request that the Court schedule a hearing to determine the amount of the forfeiture money judgment pursuant to Fed. R. Crim. P. 32.2(b)(1)(B), the United States respectfully requests that the Court schedule a forfeiture hearing prior to the Defendant's sentencing (currently scheduled for July 8, 2020) so that the Court may enter the Preliminary Order of Forfeiture prior to the Defendant's sentencing. *See* Fed. R. Crim. P. Rule 32.2((b)(2)(B) ("Unless doing so is impractical, the court must enter the preliminary order of sufficiently in advance of sentencing to allow the parties to suggest revisions or modification before the order becomes final as to the defendant under Rule 32.2(b)(4)").

WHEREFORE, the United States requests that this Court:

(a) schedule a forfeiture hearing, if one is requested by the Defendant, prior to the Defendant's sentencing;

(b) enter the Preliminary Order of Forfeiture in the form submitted herewith;

(c) include the forfeiture, as set forth in the Preliminary Order of Forfeiture, in the oral pronouncement of the Defendant's sentence;

(d) retain jurisdiction for the purpose of enforcing the forfeiture; and

(e) incorporate the Preliminary Order of Forfeiture in the criminal judgment entered against the Defendant, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4).

Respectfully submitted,

ROBERT K. HUR
United States Attorney

By: \_\_\_\_\_/s/\_\_\_\_\_
Jennifer L. Wine
Daniel C. Gardner
Jennifer. R. Sykes
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

  I hereby certify that the foregoing Motion for Preliminary Order of Forfeiture, as well as the proposed Preliminary Order of Forfeiture, were filed through the Electronic Case Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                */s/*
                Jennifer L. Wine
                Assistant United States Attorney